# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5010-17T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.R.,

     Defendant-Appellant,

and

S.A.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.A.,

     a Minor.

_____

Submitted May 1, 2019 – Decided May 16, 2019

Before Judges Nugent, Reisner and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0044-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Lauren Derasmo, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Elizabeth Erb Cashin, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith A. Pollock, Deputy Public Defender, on the brief).

PER CURIAM

Defendant A.R. (Allie)[1] appeals from a June 20, 2018 judgment terminating her parental rights to her son J.A. (Jake). The law guardian, on behalf of Jake, takes no position on the appeal. S.A. (Sean), the child's father, does not challenge the judgment. We affirm for the reasons expressed by Judge William R. Delorenzo, Jr. in his thorough and well-reasoned fifty-two page written decision.

The facts are set forth in detail in the judge's opinion. A summary will suffice here. Jake was born in 2007. The Division of Child Protection and

---

[1] We utilize fictitious names to protect the parties' privacy.

Permanency (Division) began receiving referrals of odd behavior by Allie virtually since Jake's birth. The Division removed Jake from Allie's care when he was approximately two months old as a result of intractable psychiatric issues affecting Allie's ability to safely parent the child, including two failed suicide attempts, Bipolar Disorder and Attention-Deficit/Hyperactivity Disorder, and prescription drug abuse. The Division placed Jake with Sean, but he proved to be an unreliable parent, due to illicit drug use and chronic criminality, which led to his incarceration. Thus, for the better part of this litigation, Jake has resided with his paternal grandmother, L.A. (Lisa), who is willing to adopt him.

The Division implemented services for both parents since the onset of this matter, which lasted for a period of years. None of the services succeeded in abating Allie's drug abuse, or ameliorating her mental health issues and concerns for her ability to safely parent Jake.

Specifically, Allie received the benefit of multiple psychological, psychiatric, and substance abuse evaluations. Allie was also required to undergo random urine screens, attend individual counseling and medication monitoring, and comply with recommendations, all of which were unsuccessful. Nonetheless, the Division continued to implement services, including a referral to a Mentally Ill Chemical Abuser (MICA) Partial Hospitalization Program. The

Division attempted to facilitate visitation by offering Allie parenting classes and enrolling her and Jake in three therapeutic programs, but its efforts met with little success because Allie failed to comply and Jake expressed no desire to see her. Visitation dwindled and ultimately ceased altogether.

Allie and Jake participated in psychological evaluations, which resulted in a recommendation that Jake receive individual therapy and have no unsupervised contact with either parent because he was experiencing significant anxiety. Allie received two separate psychological evaluations, which confirmed her mental health issues would expose Jake to a significant risk of harm.

Dr. Robert Miller performed a psychological evaluation of Allie. He concluded she did not fully understand the extent of her mental illness and denied the need to be on medication for the rest of her life. He found Allie did not "demonstrate minimal capacity for parenting in that she denie[d] need for psychiatric care, [her] symptoms remain poorly managed, and [she was] superficially compliant with services."

Dr. Miller conducted bonding evaluations between Allie and Jake, and Lisa and Jake, and a second psychological evaluation of Allie, and concluded:

[Allie] continues to demonstrate deficits to provide minimal parental safety, care, and emotional nurturance for [Jake]. . . .

[Jake] has indicated by his behavior and statements he no longer wishes to see his mother, appears to have demonstrated improved functioning in the care and custody of the paternal grandmother, and appears identified with his biological father who remains incarcerated.

[Jake] has demonstrated emotional and psychological problems that have resulted from exposure to pathological parenting/emotional neglect. He has required services, and will require services into the future. [Allie] is unable to recognize his special needs and placement of [Jake] in her care and custody would likely result [in] increasing risk of harm for emotional neglect.

[Jake] should remain in the home of the paternal grandmother for the purpose of adoption. The paternal grandmother has demonstrated her capacity to help [Jake] overcome emotional and psychological problems that have resulted from [a] history of exposure to pathological parenting and emotional neglect.

[Jake] will not experience immediate or long-term enduring or significant harm if separated from [Allie] by the court. [Allie] will be unable to help [Jake] overcome expected harm if separated from the home of the paternal grandmother and his relationship with her.

A-5010-17T3

At the guardianship trial, the Division presented expert testimony from Dr. Miller and Dr. Samiris Sostre,[2] and fact testimony from the Division caseworker and Jake's therapist Dr. Daniel Bromberg—all of whom Judge Delorenzo found credible. Allie offered no testimony and Sean did not appear for trial.

The judge concluded the Division had proven the four prongs of the best interests test under N.J.S.A. 30:4C-15.1(a). He concluded Allie had endangered Jake's safety and would continue to do so because she failed to remediate her mental health and substance abuse issues. The judge found Allie had caused Jake psychological harm. The judge concluded Allie was not committed to care for Jake because she had only minimally complied with services and exercised visitation inconsistently.

The judge concluded Allie was unable to overcome the harm she had caused and would continue to cause Jake because she was in denial and unable to address her serious mental health and substance abuse issues. Also, Allie was unable to support herself, let alone meet Jake's needs. Conversely, Jake had

---

[2] Dr. Sostre performed a psychiatric evaluation of Allie on behalf of the Division.

A-5010-17T3

bonded with Lisa and was thriving in her custody. The judge concluded Jake would not suffer harm if the court terminated Allie's parental rights.

The judge found the Division had offered Allie a litany of services, which had not proven successful in remediating her parenting deficits because Allie failed to comply with services except in a superficial manner. The judge also found the Division had considered kinship legal guardianship, but Lisa wished to adopt Jake. The judge concluded a termination of parental rights followed by adoption would not do more harm than good because Jake had been in Lisa's custody since October 2015, had bonded with her, and had "severed his tie" to Allie.

On this appeal, Allie raises the following points for our consideration:

> I. THE LOWER COURT ERRED IN FINDING [ALLIE] WAS UNABLE TO ELIMINATE THE HARM TO HER CHILD BECAUSE THE COURT FAILED TO CONSIDER HOW [ALLIE] HAD COMPLIED WITH EVERY DEMAND [THE DIVISION] PLACED ON HER.
>
> II. THE RECORD DOES NOT CONTAIN SUFFICIENT EVIDENCE TO SUPPORT A FINDING THAT [THE DIVISION] MET ITS BURDEN OF PROOF UNDER THE THIRD PRONG BECAUSE ITS EFFORTS TO REUNITE DID NOT INCLUDE FOLLOWING ITS OWN EXPERTS' RECOMMENDATIONS AND [THE DIVISION] FAILED TO PROVIDE THE FAMILY WITH ADEQUATE MEDICAL TREATMENT.

A-5010-17T3

A. [The Division]'s Minimal Efforts To Reunify [Allie] And Her Child Were Not Reasonable Because [The Division] Was Consistently Notified By Its Own Experts That [Allie]'s Prescribed Mental Health Treatment Was Ineffective But It Did Nothing to Implement Its Own Expert's Recommendations.

B. [The Division] Failed to Properly Facilitate Visitation Between [Allie] and [Jake].

Having reviewed the record, we conclude that these arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only these comments.

In reviewing Judge Delorenzo's decision, we must defer to his factual findings unless they "went so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citation omitted). So long as "they are 'supported by adequate, substantial and credible evidence,'" a trial judge's factual findings will not be disturbed on appeal. In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (citations omitted). We owe special deference to the trial judge's expertise in handling family issues. Cesare v. Cesare, 154 N.J. 394, 411-13 (1998).

Under the "best interest of the child" standard, the Division must prove by clear and convincing evidence:

(1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a).]

"Importantly, those four prongs are not 'discrete and separate,' but 'relate to and overlap with one another to provide a comprehensive standard that identifies [the] child's best interests.'" N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 606-07 (2007) (quoting In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999)).

Having reviewed the record, we conclude Judge Delorenzo's factual findings are based on sufficient credible evidence, and in light of those findings,

his legal conclusions are unassailable. There was no credible evidence adduced at trial to indicate an adjustment of Allie's medication or better coordination of her medicine regimen would have ameliorated her parental deficits. Rather, the expert testimony supported the judge's conclusion that Allie was incapable of remediating the harm and remained a substantial risk of harm to Jake, despite receiving substantial services from the Division.

Finally, the Division provided a host of visitation services targeted to facilitate Allie's reunification with Jake. The credible evidence in the record demonstrates the Division met its reasonable efforts obligation to provide services designed to remedy the parental deficiencies which led to Jake's removal. The decision to grant the judgment of guardianship and terminate parental rights is in Jake's best interests.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5010-17T3